Curia, per

Evans, J.
From the evidence in this case, I think it is pretty clear, that but for Stroud’s promise, Hen-ning would not have got the hogs from the plaintiff, and therefore it may be said, in some sense, that the credit was given to Stroud; but that is always the case where the creditor refuses to trust a debtor unless he is “ made safe,” by the promise of a third person. If a merchant says to A, I will not trust you with my goods, and thereupon B says, let him have the goods, and I will see you paid, in such case, although the goods would not have been delivered but for the promise, it has never been supposed that B was liable, without writing, if the creditor looked in any way to A for the payment of the debt; but if no credit whatever was given to A, then B would be regarded as the one to whom credit alone is given, and would be bound by the promise. The promise of Stroud was, that “ he would be Henning’s security,” that he would sign a note “ with him” for the amount. The case, then, presents this question, whether a parol promise to be another’s security, or to sign a note with him, upon the faith of which property is sold and delivered, is not void under the statute of frauds. The 4th section of the statute of frauds provides “that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, unless the agreement upon which such action be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.” It is said by Chitty; (Chitty on Con. 402,) if the person for whose use goods are furnished be liable at all, the defendant’s engagement, though it were the chief inducement to the plaintiff to supply the *377 goods, is collateral, and must be reduced to writing. It is also said in the same work, that the statute applies if the third party be at all trusted. The principle thus stated is well sustained by the authorities. Thus, in Buckmyer vs. Darnall, 2 Ld. R. 1085, the plaintiff declared the defendant, in consideration that the plaintiff, at his request, would lend to one English a horse, that English would re-deliver the horse. At first some of the Judges doubted if this was not an original or direct undertaking,; but after consultation, it was decided that the defendant was not liable on this parol agreement, because English might be sued in de-tinue for the horse. So, also, in Matson vs. Wharham, 2 T. R. 80, Justice Buffer says, “ the general rule now taken is, if the person for whose use the goods are furnished is liable at all, any promise by a third person to pay that debt must be in writing, otherwise it is void under the statute of frauds.” In this case a distinction was attempted to be made between promises before delivery and after, but the court denied there was any such distinction. These are quoted as the leading cases, in most of the cases since decided, both in England and the American States, and are so referred to in the case of Leland vs. Creyon, 1 McC. 100. In that case, Judge Gantt, delivering the opinion of the court, says, if Leonard, to whom and for whose use the goods were delivered, was originally liable to be sued, then the promise of Creyón was collateral and void. These authorities, with numerous others which might be cited, go to establish the principle that if there be any liability on the party to whom the goods are delivered, upon which an action may be brought, the promise of a third person to pay the same debt, should be in writing. The principle is further illustrated by those cases which establish a promise to pay the debt of another’, subsisting at the time of the promise; such as the case of Corbet vs. Cochran, Riley’s Law Cases, 44. All these cases go on the ground that the original debtor was wholly discharged. Unless that had been the case, the promise could not have been binding; it would have been collateral, and within the statute of frauds. What, then, was the promise of the defendant'? At the utmost, it is no more than a promise to be Henning’s security, as stated by the witness in one part of his examination, *378 or as stated in another part, to sign a note with Henning for the price of the hogs. So far as the obligee is concerned, the law makes no distinction between principal and security. He has a right to look to all, and on a joint and several contract, may hold each liable, severally, to him.— But if the rule be as I suppose, that both cannot be liable on a parol agreement at the same time for the same debt, unless they are joint contractors, if Henning was liable at all, Stroud was not. This liability was not to be exclusive, but was according to the agreement to'be super-added to Henning’s, by signing his name to a note to be signed also by Henning. Taking the agreement therefore as proved, and giving it the only rational interpretation which it will admit of, to wit: that if Bronson would deliver the hogs to Henning, the defendant would sign with Henning a joint and several note for the payment of the money, I can come to no other conclusion but that the promise of the defendant was not a primary, or original and direct undertaking, but was what is usually in the cases decided, called a collateral undertaking, which is not perhaps' in all cases the most appropriate term to convey the idea. But if, as we are at liberty to do, (Chitty, Con., 404, and cases referred to,) we look to the conduct and acts of Bronson to aid us in the interpretation of the contract, there can be but little doubt of what was his interpretation of.it— He retained the note, received part payment from Henning, treated it as his note, sued and recovered judgment on it, and never resorted to Stroud until after Henning’s insolvency. As the plaintiff held Henning liable to him for the debt, then Stroud’s promise was to pay Henning’s debt, and should therefore have been -in writing. If the credit had been given to Stroud, the promise would have been that he would pay the money, or give his own note for it. If such had been the fact, then he would have been liable.— It is supposed this is like the promise to accept a bill of exchange, which, it has been held, is binding, although it be by parol, (4th Taunton, 64,) but that case is in no respect like this. The acceptor is presumed to accept a bill on the faith of the funds in his hands, of which the bill is an appropriation. His undertaking and liability is not for the debt or default of another. He, and he alone, is primarily *379 liable. No other is liable except on his default. His is not a promise to pay the debt of the drawer, but to apply the drawer’s funds in his hands to the payment of the drawer’s debt, or according to his order. I think, therefore, the verdict is wrong. There is no evidence to sustain it. on the promise, and there is nothing to support the count for deceit. The only remaining question is, shall there be a new trial, or a non-suit. There is no dispute about the facts. The case has been considered on the evidence given by the plaintiff. The facts being ascertained, the legal effect of them is a question of law as declared in the case of Leland vs. Creyon, 1 McC., 105, and it being the opinion of this court, that the plaintiff cannot recover on his own evidence, a non-suit should have been ordered on the circuit.
The motion for a non-suit is granted.
Richardson, O’Neall and Butler, JJ., concurred.